## Crider v. Kentenia-Catron Corporation.

(Decided May 7, 1926.)

### Appeal from Harlan Circuit Court.

1.  Estoppel—After-Acquired Title to Church Property Not Mentioned or Reserved in Deed, Immediately Passes to Purchaser of Land.— Where vendor conveyed land on which there was situated a church,

making no mention or reservation of such portion, any title there-
after acquired by vendor to church property by reversion immedi-
ately passed to purchaser.

2.  Champerty and Maintenance—Deed to Disputed Tract Made by
    Heirs of Former Owner when in Adverse Possession of Other Par-
    ties, Held Champertous and Void (Kentucky Statutes, Section
    210).—Under Kentucky Statutes, section 210, a deed made by heirs
    of original owner of land to disputed tract, then in adverse posses-
    sion of other parties, was champertous and void.

3.  Clerks of Courts.—On clerk's failure to observe Supreme Court
    rule 3, subsection 9, by failing to index record, his fee will be
    reduced accordingly.

CHAS. B. SPICER for appellant.

SAMPSON & SAMPSON and H. M. COLLINS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

The trial court, upon the petition of the appellee,
quieted its title to a small tract of land claimed by the
defendant, Crider, and he has appealed. This disputed
tract contains about three acres, and lies upon the line
between the A. Crump and the James Ball patents. About
one-fifth of it is on the Crump and four-fifths on the Ball
side of the line. In 1851, one William Turner bought the
Ball patent, and in 1854 the Crump patent. In 1852
Turner sold to G. W. Hensley the land embraced in the
Ball patent, and some other land he had bought from
other parties. Thus the title to practically four-fifths of
the disputed land passed to Hensley. In 1870, Turner
sold to Hugh Irvin the north portion of the Crump sur-
vey, and thus the title to the one-fifth of the disputed
tract that lay within the Crump survey passed to Irvin.
A log building was constructed upon the Crump portion
of this disputed tract, near the line between the Crump
and Ball surveys. This building was constructed through
a community effort, and was used for church and school
purposes and around and about this church there was
left open and used by the public as a hitching ground
and playground, the tract of land concerning which this
dispute has arisen.

It is claimed by Crider that Hugh Irvin made a con-
veyance of one-fourth of an acre where this building
stood, for church purposes, but there is no evidence to
whom this conveyance was made, and no satisfactory evi-
dence that it was made at all. On the contrary, in 1897,

when Irvin sold and conveyed by general warranty a portion of this Crump land to Josephus Hensley, Irvin, by the description in the deed, conveyed to Hensley everything up to the Crump line. In the descriptive part of this deed, the beginning corner is described as "a locust near a church house." The description contains reference to the Crump line, and follows it. The deed contains no exceptions from the boundary described. By this deed, all of this disputed tract lying south of the Crump line passed from Irvin to Hensley; as stated above, the title to the four-fifths of this disputed tract lying north of the Crump land had been conveyed by Turner to G. W. Hensley, and we can find in this record no trace of title in Irvin to any portion of this disputed tract north of the Crump line. On the contrary, on this same day Irvin sold and conveyed by general warranty deed to T. G. Harris what he had left of the Crump patent, and a portion of the Ball patent, which he had acquired, and in the description, used this language:

"Beginning at a locust tree near the meeting house near Josephus Hensley, thence with the line between Irvin and Hensley."

Now, this line which was in this deed described as beginning at a locust tree and running with the line between Irvin and Hensley, is the east line of this disputed tract. Irvin owned the land to the east of this line, and Crider is contending that he also owned the land to the west of the line, but this description was clearly a recognition by Irvin then that Hensley owned the land to the west of this line.

From this record, it appears that by these two deeds, Irvin disposed of all the land he owned in Kentucky, and he moved to and lived the remainder of his life in Virginia. By the deed to Hensley he disposed of all this disputed tract south of the Crump line to him, and when he signed the deed to Harris, Irvin expressly admitted title to all this disputed tract north of the Crump line was then in Hensley. This record shows that the title to all this disputed tract remained in Hensley until by mesne conveyances, it passed to the Kentenia-Catron Corporation.

Crider contends that in the deed by which Irvin conveyed this disputed tract for church purposes, as above stated, Irvin inserted a provision that when this

tract ceased to be used for church purposes, it should revert to him, and in 1923 that he acquired this disputed tract from A. J. Irvin and John Smith, who were, according to Crider, but not according to the evidence, the only heirs of Hugh Irvin, the former being a son and the latter a grandson and Crider's title is rested upon those two conveyances. Crider's contention is that after the community ceased to use this building and this tract in dispute for church purposes, that it reverted to Hugh Irvin; that it passed by descent from him to his son, A. J. Irvin, and his grandson, John Smith, from whom Crider claims to have derived his title.

In Perkins v. Coleman, 90 Ky. 611, 14 S. W. 640, 12 Ky. L. R. 501, we said:

"Where it clearly appears from the writing that the vendor has conveyed, or agrees to convey, a good and sufficient title, and not merely his present interest in the land, the agreement runs with the land, and repeats itself every day, and if the vendor, at the time of the conveyance, has not title to the land, but subsequently acquires the title, it, '*eo instante*,' inures to the benefit of the vendee and his privies.''

Thus, if Crider's contention were true, and Irvin did not then own a portion of the land which he undertook to convey to Hensley, and that he afterwards acquired title thereto by reversion, that title immediately passed to Hensley.

Besides this, the evidence in this record shows that at the time the deeds to Crider were made, this disputed tract was then in the adverse possession of other parties. Hence the deed to Crider was champterous, and by our statutes, section 210, a deed of that character is void.

Instead of showing that the trial court's judgment is erroneous, this record sustains it, and shows it to be correct.

In making up this record the clerk failed to observe subsection 9 of rule iii. of this court, and his fee of $171.40 charged for making the same is reduced to $161.40, and if he has been paid, he shall refund $10.00 for failing to properly index this record.

The judgment is affirmed.